MALDONADO & CO. v. YGLESIAS et al.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

1. LIBEL AND SLANDER (§ 9*)—ACTIONABLE WORDS—CHARGING PROTEST ON DRAFT.

A charge that a draft accepted by a merchant had been protested for nonpayment, standing alone, is libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

2. LIBEL AND SLANDER (§ 9*)—ACTIONABLE WORDS—DECLINING TO ACCEPT DRAFT.

Defendant sent to his customers a circular letter to the effect that a draft drawn on plaintiff by a foreign correspondent and accepted by plaintiff was protested for nonpayment, and that therefore defendant would not accept drafts on plaintiff, except for collection. The reason given for declining plaintiff's drafts was true. *Held*, that defendant had a right to so notify his customers, and that irrespective of the plaintiff's financial responsibility, or whether in fact plaintiff paid the dishonored draft, such notice was not libelous, as a charge that plaintiff was insolvent and unworthy of credit.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

Appeal from Special Term, New York County.

Action by Maldonado & Co. against Luis F. Yglesias and another. From an order denying defendants' motion for judgment on the pleadings, they appeal. Order reversed, and motion granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Mark G. Holstein, of New York City, for appellants.

Adam K. Stricker, of New York City (James J. Franc, of ·New York City, on the brief), for respondent.

MILLER, J. The question in this case is whether a cause of action for libel is stated in a complaint which shows that the alleged libelous article is true. The plaintiff is a corporation engaged in the import and export business, principally between the United States and the Dominican Republic and the Republic of Venezuela.· The alleged libel consisted of a circular letter in the Spanish language, of which the following is a translation:

"New York, January 19, 1912.

"Dear Sirs and Friends: On the 12th inst. a draft accepted by Messrs. Maldonado & Co., of this city, and drawn on them by one of their connections in the Republic of Santo Domingo, was protested on account of nonpayment, and we therefore wish to make known to all our connections that we will by no means whatever accept drafts on the above-named firm in payment of amounts falling due, but only for purpose of collection. Kindly acknowledge receipt of this circular, and, asking you to kindly comply with our above wish, we beg to remain,

"Yours very truly,          Yglesias, Lobo & Co."

The complaint alleges that a draft drawn on the plaintiff to the order of the defendants by Battle, Vega & Co., at Santiago de los Caballeros,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Dominican Republic, for $5,000, which matured January 12, 1912, and which had been accepted by the plaintiff, was in due course presented by the holder for payment, that payment was refused, and that it was protested for nonpayment. The complaint also alleges that the plaintiff refused payment because of a cable order from Santiago "to hold up payment for orders until January 18, 1912," that the reason for such refusal was stated in writing and attached to the draft, that the defendants were notified of the reason, and that, on the 15th day of January, 1912, the plaintiff received cable instructions to pay the draft, and thereupon and on that day notified the defendants, through their attorney, of said instructions, and paid the draft and the protest fees. By way of innuendo, the plaintiff alleges that the charge was:

"That the plaintiff was insolvent, and financially embarrassed, and unworthy of credit, and that it did not discharge, and was not able to discharge, its financial obligations as and when the same matured, and that the plaintiff was dishonest in its business dealings."

[1] We have no doubt that, standing alone, a charge that a draft accepted by a merchant had been protested for nonpayment is libelous per se. But the difficulty is that the plaintiff did not rest upon the averment of a false publication, but showed by other averments that the publication was true.

The contention of the plaintiff is that, although the article was literally true, it was false in fact, because it did not state that the draft had been paid. No doubt a publication, literally true, may be false in fact, because of the false impression which it creates. Half truths may be more injurious than positive misstatements. But the article in question, construed in the light of the extraneous circumstances, is not susceptible of the charge of being deceptive.

[2] The defendants had the right, without assigning a reason, to give notice to their customers that they would not accept drafts drawn on the plaintiff, except for collection. They also had the right to state the reason, if a true one. The plaintiff refused to pay at maturity a draft accepted by it, and allowed it to be protested for nonpayment. That was a sufficient reason to justify the defendants in refusing to accept other drafts in payment, irrespective of the financial responsibility of the plaintiff, or whether in fact it paid the dishonored draft. One merchant might well refuse to give another credit who allowed his paper to be dishonored, whatever the reason, or however certain collection by legal process might be. As the defendants confined themselves to the truth, and said only what they had a right to say, they cannot be held answerable for something they did not say.

The order should be reversed, with $10 costs and disbursements, and the motion for judgment granted, with $10 costs. All concur.